NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERROD KAUFMAN & RACHEL KAUFMAN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., et al.,<br><br>Defendants. | Civ. No. 14-6434<br><br>**OPINION** |

THOMPSON, U.S.D.J.

      This matter is before the Court upon the Motion of Plaintiffs Jarrod Kaufman and Rachel Kaufman (collectively "Plaintiffs") to Remand[1] the case to the Superior Court of New Jersey, Law Division, Middlesex County. (Doc. No. 6). Defendants Lumber Liquidators, Inc. ("LLI") and Robert M. Lynch (collectively "Defendants") oppose. (Doc. No. 13). The Court has decided this Motion based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Plaintiffs' Motion for Remand will be granted.

## BACKGROUND

      Plaintiffs brought this action on behalf of themselves and the putative class against Defendants in the Superior Court of New Jersey on September 4, 2014, alleging that documents used by Defendants in the sale and delivery of wood flooring products violated New Jersey's

---

[1] Plaintiffs also seek costs and fees incurred as a result of the removal. (Doc. No. 6 at 22-24).

1

Delivery of Household Furnishing Regulations ("Furniture Delivery Regulations"), N.J.A.C. 13:45A–5.1 and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14.

On August 29, 2012 and October 20, 2012, Plaintiffs purchased hardwood flooring for home delivery from Defendants. (Doc. No. 1, Ex. A, at ¶¶ 18-23). According to Plaintiffs, the invoices they received from Defendants failed to include language regarding delivery dates and seller's obligations in the case of delayed delivery as required by the Furniture Delivery Regulations. (*Id.* at ¶¶ 24-30). Plaintiffs assert that Defendants use the same form invoice for sales of household furniture or furnishings for delivery in New Jersey, that they received this form invoice as part of their purchases, and that the form invoice failed to comply with the Furniture Delivery Regulations. (*Id.* at ¶¶ 31-33).

Plaintiffs further assert that because Defendants violated the Furniture Delivery Regulations, they also violated the TCCWNA. (*Id.* at ¶¶ 49-67). The TCCWNA imposes liability on sellers who, in the course of their business, enter into a consumer contract that "violates any clearly established legal right of a consumer . . . established by State or Federal law . . . ." N.J.S.A. 56:12-15. Plaintiffs claim that Defendants violated the TCCWNA because the Defendants' invoices constituted consumer contracts and these contracts violated clearly established consumer rights set forth in the Furniture Delivery Regulations. (Doc. No. 1, Ex. A, at ¶¶ 49-67).

Plaintiffs bring this lawsuit on behalf of a putative class, defined as follows:

All persons who purchased household furniture or furnishings for future delivery from any Lumber Liquidators location to be delivered to an address in New Jersey at any time on or after the day six years prior to the date on which this complaint is filed [September 4, 2014] using an invoice the same or similar to the invoices used in the transactions with Plaintiffs on August 29, 2012 and October 20, 2012.

(*Id.* at ¶ 35). Therefore, the alleged class period is September 4, 2008 through September 4, 2014.

On October 17, 2014, Defendants removed the case to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. (Doc. No. 1). CAFA grants federal courts jurisdiction over class actions in which (1) the amount in controversy exceeds $5,000,000 in the aggregate, (2) any class member and any defendant are citizens of different states, and (3) there are at least 100 members in the putative class. 28 U.S.C. § 1332(d)(2), (d)(5)(B). Plaintiffs are citizens of New Jersey while Defendant LLI is incorporated in Delaware, with its principal place of business in Virginia. (Doc. No. 1, Ex. A, at ¶¶ 16, 17). Defendant Lynch is a citizen of Virginia. (*Id.* at ¶ 18). There seems to be no dispute that there are at least 100 members in the putative class. Only the amount in controversy is contested by the parties.

## DISCUSSION

A. Legal Standard

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). The parties agree that if the Court has subject matter jurisdiction over this case, it is pursuant to CAFA. The party asserting jurisdiction bears the burden of showing that the case is properly before the federal court. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). If the facts forming the basis for jurisdiction are disputed by the parties, the party alleging federal jurisdiction has the burden to justify his allegations by a preponderance of the evidence. *See id.* at 194–97; *Judon v. Travelers Prop. Cas. Co. of America*, – F.3d –, 2014 WL 6997485, at *6 (3d Cir. Dec. 12, 2014); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. – , slip op., at 6 (Dec. 15, 2014) (requiring both parties to submit proof where jurisdiction is contested, and the court decides, by a

3

preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied).  Where the underlying jurisdictional facts are not contested and plaintiffs' complaint does not expressly limit the amount in controversy below CAFA's $5 million threshold, the case must be remanded to state court if it appears to a "legal certainty" that plaintiffs cannot meet CAFA's amount in controversy requirement.  *See Frederico,* 507 F.3d at 197; *Judon,* 2014 WL 6997485, at *3–6; *Hoffman v. Nutraceutical Corp.*, 563 Fed. App'x 183, 185 (3d Cir. 2014).  The district court may rely on defendant's notice of removal in assessing whether the minimum jurisdictional amount has been met in a CAFA case removed to a district court.  *See Frederico*, 507 F.3d at 197–98.  The amount in controversy is determined from a "reasonable reading of the value of the rights being litigated" based on the pleadings on the date of removal.  *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993); *see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) ("A district court's determination as to the amount in controversy must be based on the plaintiff's complaint at the time the petition for removal was filed."); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004).  Unlike other removal statutes, CAFA carries no antiremoval presumption.  *See Dart Cherokee*, 574 F.3d at slip op. 7.

   B.  Analysis

Here, Plaintiff's Complaint demands injunctive relief, statutory civil penalties, actual damages, attorneys' fees, and other relief from Defendants.  (Doc. No. 1, Ex. A, at ¶ 67).  It does not include any estimates useful for calculating the amount in controversy.  Defendants, in their notice of removal, assert that CAFA's $5 million threshold is easily satisfied based on their assessment of the number of deliveries and average sale prices during a portion of the class period.  (Doc. No. 1 at 10-12).  Defendants track their deliveries in three categories: (1) small parcels weighing 149 pounds or less; (2) less than a truckload ("LTL") deliveries weighing 150

to 20,000 pounds; and (3) specialized home deliveries.  (*Id.* at ¶ 22).  Defendants' business records show that from August 2012 through August 2014, there were 3,500 small parcel deliveries to New Jersey addresses.  (*Id.* at ¶ 23).  From January 2011 through August 2014, there were 300 LTL deliveries to New Jersey addresses, and from January 2013 through September 4, 2014 there were 4,500 specialized home deliveries.  (*Id.* at ¶¶ 24, 25).  Adding these deliveries together yields 8,300 deliveries between 2011 and 2014, or roughly half the class period.  (*Id.* at ¶ 26).

Plaintiffs seek TCCWNA statutory civil penalties of $100 per violation, and Defendants have identified 8,300 deliveries to New Jersey addresses.  Thus, statutory civil penalties could plausibly amount to at least $830,000.  (*Id.* at ¶ 43).  In addition, the Furniture Delivery Regulations require sellers of household furniture for delivery to offer consumers the option of canceling the order and receiving a full refund in the case of delivery delays.  *See* N.J.A.C. 13:45A–5.1.  Thus, to estimate actual damages,[2] Defendants calculated an average sale price of $1,621.67 for sales between 2011 and 2013 based on their Form 10-K's and multiplied this price against the 4,800 LTL and specialized home deliveries[3] identified from 2011 to 2014, yielding damages of about $7,784,016 for only a portion of the six year class period.  (*Id.* at ¶¶ 39-41).  Lastly, Defendants point out that attorneys' fees are properly included as part of the amount in controversy, and the Third Circuit has found attorneys' fees to constitute roughly 30 percent of the judgment in class actions.  *See Frederico*, 507 F.3d at 199.  Therefore, Defendants claim that

---

[2] Since Plaintiffs' primary objection to Defendants' amount in controversy assessment is that Plaintiffs are not seeking any actual damages, the Court declines to reach the issue of whether Defendants' method of calculating actual damages is appropriate.

[3] The 3,500 small deliveries were omitted from this calculation because the average sale price tracked by Defendants does not include transactions under $250. (Doc. No. 1 at 11, n. 5).

5

the amount in controversy is well over CAFA's $5 million threshold, and as a result, this court has jurisdiction over the case.

In response, Plaintiffs assert that the single reference to "actual damages" in the Complaint's prayer for relief was a typographical error, as the rest of the Complaint does not allege any facts or elements necessary to assert actual damages. (Doc. No. 6 at 4-6, 16-17). Instead, Plaintiffs state that they are only seeking a $100 per violation TCCWNA statutory civil penalty. (*Id.*). Thus, with 8,300 deliveries identified by Defendants, damages for the portion of the class period analyzed by Defendants would only amount to $830,000, far short of CAFA's $5 million threshold, and thus precluding federal jurisdiction. (*Id.* at 20).

After reviewing the Complaint as a whole, the most reasonable reading indicates that the inclusion of actual damages in the prayer for relief was a typographical error since there is no other reference to injuries or losses incurred by Plaintiffs in the rest of the Complaint. Instead, the Complaint's factual allegations assert only that Defendants' invoices failed to contain the statutorily required language regarding sellers' delivery date and delayed delivery obligations and does not identify any actual harm to Plaintiffs or even state any allegations of delayed delivery by Defendants. The fact that the Complaint fails to properly plead a claim for actual damages under Federal Rule of Civil Procedure 12(b)(6) further supports Plaintiffs' claim that the sole reference to actual damages in the Complaint is an error and should be disregarded. *See Jackson v. Prime Motors, Inc.*, No. 11-2360, 2011 WL 1883806, at *4 (E.D. Pa. May 18, 2011) (granting plaintiff's motion to remand after concluding that the amended complaint's isolated references to a federal statute were typographical errors and did not justify removal); *Citigroup Inc. v. Wachovia Corp.*, 613 F. Supp. 3d 485, 492–93 (S.D.N.Y. 2009) ("This Court will not base subject matter jurisdiction on a typographical error.").

Defendants rely on *Werwinski v. Ford Motor Company* for the argument that courts assessing the amount in controversy for jurisdictional purposes should give effect to the complaint's prayer for relief in its entirety. 286 F.3d 661 (2002); Doc. No. 13 at 14-16. In *Werwinski*, plaintiffs brought a class action suit against Ford Motor Company, asserting various consumer fraud claims stemming from allegedly defective car transmission components. *Werwinski*, 286 F.3d at 663. Plaintiffs had initially filed the suit in state court; defendants removed it to the district court; and plaintiffs subsequently filed a motion to remand. *Id.* at 664. Even though plaintiffs argued that they were only seeking compensatory damages in the form of repairing or replacing the defective transmissions, which would not meet the $75,000 amount in controversy requirement for diversity jurisdiction, the district court denied plaintiffs' motion and accepted defendants' amount in controversy calculations based on the sale and lease prices of the cars. *Id.* at 666–67. The Third Circuit affirmed the district court's ruling, stating that plaintiffs' claims for only the repair or replacement cost of the transmissions was contradicted by the complaint's prayer for relief, which sought "compensatory damages" including "all or part of the sums [plaintiffs] paid to purchase or lease [their] automobiles." *Id.*

The present case is distinguishable from *Werwinski*. In *Werwinski*, plaintiffs alleged fraud based on defective car transmission parts, and although plaintiffs claimed that they were only seeking transmission repair and replacement costs, these claims were undermined by several facts. First, the complaint's prayer for relief not only requested an order declaring Ford financially responsible for all or part of the purchase or lease price of the cars but also demanded that Ford disgorge any profits received from the sale or lease of the cars. *Id.* Second, the factual allegations in the complaint asserted that plaintiffs were damaged simply by virtue of having purchased the vehicles and that they would not have purchased or leased them had they known of

7

the transmission defects. *See Werwinski* Defendant/Appellee Brief at *12; Plaintiff/Appellant Reply Brief at *8. Thus, a reasonable reading of the *Werwinski* complaint would support the conclusion that plaintiffs sought more than just transmission repair and replacement costs.

Here, however, Plaintiffs' Complaint does not allege any facts regarding damages sustained by Plaintiffs. They have not alleged any defects in the products purchased from Defendants, nor have they claimed any delivery delays by Defendants. Instead, the factual allegations in the Complaint only allege that Defendants' sales invoices failed to contain mandatory statutory language regarding sellers' delivery obligations. (Doc. No. 1, Ex. A, at 2-5). And, the last sentence of the sole count of the Complaint states, "Defendants are liable to Plaintiffs and putative class members for a statutory civil penalty of a minimum of $100 per invoice and reasonable attorney's fees and costs pursuant to N.J.S.A. 56:12-17" and does not reference any other damages. (*Id.* at ¶ 67). Thus, unlike in *Werwinski*, the mention of actual damages in the Complaint's prayer for relief appears to be an isolated and erroneous reference without any support from the rest of the Complaint.

Without the prospect of actual damages, it appears that Plaintiffs will be unable to meet CAFA's $5 million amount in controversy threshold. Given the $100 per violation statutory penalty under the Household Furniture Regulations, there would have to be at least 50,000 New Jersey home deliveries by Defendants during the six year class period in order to reach $5 million. Defendants, in their Notice of Removal, identified only 8,300 such sales between 2011 and 2014. (Doc. No. 1 at ¶ 26). Proportionally scaling Defendants' estimates to cover the entire class period[4] yields a total of 24,600 deliveries, far short of the necessary 50,000. Multiplying

---

[4] Defendants identified 3,500 small deliveries for roughly two out of the proposed six year class period. Thus, multiplying 3,500 by three provides an estimate of 10,500 small deliveries over the entire class period. Similarly, Defendants identified 300 LTL deliveries for roughly three out

24,600 deliveries by $100 per delivery yields $2.46 million, which, even including a thirty percent increase for attorneys' fees, does not reach CAFA's $5 million threshold. Therefore, CAFA's requirements are not satisfied, and this court lacks subject matter jurisdiction over the suit. Pursuant to 28 U.S.C. § 1447(c), the case will be remanded to the state court.

Plaintiffs' Motion for Remand also seeks attorneys' fees and costs incurred as a result of Defendants' removal of the case. (Doc. No. 6 at 22-24). 28 U.S.C. § 1447(c) provides that an order remanding the case may also include payment of attorneys' fees and costs incurred from the removal. The award of such fees is left to the district court's discretion, but fees may be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). If an objectively reasonable basis exists, fees should be denied. *Id.*

Here, there was an objectively reasonable basis for Defendants' removal of the case. Plaintiffs did not identify their drafting error until after the case had been removed. Even though the Court ultimately concludes that the most reasonable reading of the Complaint indicates that Plaintiffs seek only statutory civil penalties rather than actual damages, the inclusion of "actual damages" in the Complaint's prayer for relief, coupled with the fact that the TCCWNA imposes a statutory civil penalty of at least $100, actual damages, or both, at the consumer's election, do provide some basis for Defendants' interpretation of the Complaint. N.J.S.A. 56:12-17. Therefore, Plaintiffs' request for attorneys' fees and costs incurred in removal will be denied.

---

of the six year class period and 4,500 specialized home deliveries for almost two of the six year class period. Doubling and tripling these estimates, respectively, yields a total estimate of 600 LTL and 13,500 specialized home deliveries for the entire class period. The sum of 10,500 small deliveries, 600 LTL, and 13,500 home deliveries produces a total of 24,600 deliveries during the six year proposed class period.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Remand will be granted, but Plaintiffs' request for attorneys' fees and costs will be denied.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
